**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

STACEY INGRAM,

      Petitioner,

v.                                                                            Case No. 2:06-CV-14955

CLARICE STOVALL,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Stacey Ingram presently incarcerated at the Scott Correctional Facility

in Plymouth, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28

U.S.C. § 2254. In her application, Petitioner challenges her conviction for first-degree

felony murder,[1] and felony-firearm.[2] For the reasons stated below, the petition for writ of

habeas corpus will be denied.

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Wayne

County Circuit Court. [3]

---

[1] Mich. Comp. Laws § 750.316; Mich. Stat. Ann. 28.548.

[2] Mich. Comp. Laws § 750.227b; Mich. Stat. Ann. 28.424 (2).

[3] Petitioner was also convicted of second-degree murder as a lesser included offense of an original charge of first-degree premeditated murder, but this conviction was vacated at sentencing. Petitioner's co-defendant, Mario Ingram, was convicted of second-degree murder at the same trial, but by a different jury.

Both Petitioner and Respondent have provided the court with extensive factual

summaries of the case.  Because the facts of this case have been repeated numerous

times, they need not be repeated here in their entirety.  Therefore, only a brief overview

of the facts is required.  *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich.

1997).  Accordingly, the court will merely recite the relevant facts regarding Petitioner's

conviction from the Michigan Court of Appeals' opinion affirming her conviction, which

are presumed correct on habeas review.  *See Monroe v. Smith,* 197 F. Supp. 2d 753,

758 (E.D. Mich. 2001):

> In the present case, the medical examiner's testimony was sufficient to prove that the victim's death was the result of a criminal agency (ligature strangulation).  Thus, the corpus delicti for felony-murder was established.  In her statement to the police, Stacey Ingram stated that she knew that Mario Ingram was going to ask the victim for money, and changed seats with him before the fatal assault.  When Mario Ingram began strangling the victim, Stacey Ingram assisted him by putting the car in park and relocking the car door after the victim managed to unlock it.  After the victim was dead, Stacey Ingram took money out of her wallet and shared it with Mario Ingram, helped Mario Ingram place tape on the victim's mouth and nostrils, helped Mario dispose of the victim's body and abandon the victim's child, kept the victim's car and wallet, and obtained cash for herself and Mario Ingram using the victim's ATM card.  Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rationale trier of fact to find beyond a reasonable doubt that Stacey Ingram assisted Mario Ingram with knowledge that Mario intended to kill the victim during the course of a larceny.

> *People v. Ingram,* No. 223970, * 2 (Mich.Ct.App. December 20, 2002).

Petitioner's conviction was affirmed on appeal.  *Id., leave to appeal denied at* 666

N.W. 2d 671 (Mich. 2003).

Petitioner subsequently filed a post-conviction motion for relief from judgment,

which was denied by the trial court. *People v. Ingram,* No. 99-000865-FC (Wayne

County Circuit Court, December 20, 2004).  The Michigan appellate courts

subsequently denied Petitioner leave to appeal. *People v. Ingram,* No. 260169 (Mich.Ct.

App. August 15, 2005); *leave to appeal denied at* 722 N.W. 2d 793 (Mich. 2006).

Further facts will be discussed when addressing petitioner's claims.

Petitioner has now filed an application for habeas relief, in which she seeks

habeas relief on the following grounds:

I. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where there was insufficient evidence presented to support the jury's finding of guilty beyond a reasonable doubt on the charge of felony murder.

II. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where the trial court erroneously denied her motion for directed verdict on the charge of first-degree premeditated murder and submitted the charge to the jury.

III. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where the trial court allowed Petitioner's statements into evidence.

IV. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where the trial court allowed evidence that deceased's daughter was abandoned introduced into evidence.

V. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where the trial court erroneously permitted morgue photos and blow-ups of said photos into evidence.

VI. The Petitioner's Fifth and Fourteenth Amendment due process rights to a fair trial were violated where the trial court incorrectly instructed the jury.

VII. Petitioner was denied her Sixth Amendment right to the effective assistance of counsel.

VIII. The Petitioner's was denied her Fifth and Fourteenth Amendment due process rights to a fair trial where the prosecutor engaged in misconduct.

IX. The Petitioner's Sixth Amendment right to confrontation was violated where the trial court admitted prior testimony of an unavailable witness whom Petitioner had never cross-examined.

3

## II. STANDARD

Title 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. DISCUSSION

### A. Claim # 1. The sufficiency of evidence claim.

Petitioner first contends that there was insufficient evidence to convict her of felony murder under an aiding and abetting theory.

4

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000)(citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002)(internal citations omitted). A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell,* 194 F. Supp. 2d at 647. A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.* Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *See Dillard v. Prelesnik,* 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (*i.e.*, malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 597 N.W. 2d 130, 136 (Mich. 1999)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

> *Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003) (citing *People v. Smielewski*, 596 N.W. 2d 636, 642 (Mich.Ct. App. 1999)).

Petitioner contends that there was insufficient evidence to convict her of first-degree felony murder, because she was merely present when the crime was committed and did not actively assist her co-defendant with the crime.

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all

words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 540 N. W. 2d 728, 733 (Mich. Ct. App. 1995).  The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime.  *People v. Lawton*; 492 N. W. 2d 810, 816 (Mich. Ct. App. 1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 493 N. W. 2d 471, 476 (Mich. Ct. App. 1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal.  *People v. McCray*, 533 N. W. 2d 359, 361 (Mich.Ct.App. 1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime.  *Turner,* 540 N.W. 2d at 734.

Petitioner is correct in stating that a person's mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense.  *See People v. Norris*, 600 N. W. 2d 658, 663 (Mich. Ct. App. 1999); *Fuller*, 662 F.2d at 424.  "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt.  In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability."  *See Long*, 450

F. Supp. 2d at 754 (internal citation omitted).  An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002).  Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support."  *Id.*

In the present case, there was sufficient direct and circumstantial evidence for a rational trier of fact to conclude that Petitioner aided and abetted in the commission of a felony murder.  Petitioner told the police that she knew that her co-defendant Mario Ingram was going to ask the victim for money and she further acknowledged changing seats with her co-defendant prior to the assault.  When Mario Ingram began strangling the victim, Petitioner placed the victim's car into park and relocked the car door, after the victim had unlocked it.  A rational trier of fact could infer from this action that Petitioner actively assisted Mario Ingram not only with the underlying larceny, but also with the fatal assault as well, in that Petitioner's actions helped to prevent the victim from escaping.  After the victim was killed, Petitioner removed money from the victim's wallet and gave some to Mario Ingram.  Petitioner helped Mario Ingram place tape over the victim's mouth and nostrils, which Petitioner herself admitted would serve to ensure the death of the victim if she had been insufficiently strangled already.  She also helped to dispose of the body, abandoned the victim's small child, and retained the victim's car

8

and wallet.  All of this evidence amply establishes that Petitioner was not a mere bystander, but was actively involved in the larceny and murder of the victim.

In addition, there was sufficient evidence to establish that Petitioner was aware of the co-defendant's larcenous intent prior to the homicide.  The felony murder doctrine in Michigan requires that a defendant intended to commit the underlying felony at the time that the homicide was committed. *People v. Brannon,* 486 N.W. 2d 83, 86 (Mich.Ct.App. 1992).  The felony murder doctrine is inapplicable if the intent to steal property is not formed until after the homicide is committed.  *Id.*  However, evidence that a defendant committed a larceny immediately subsequent to the assault is sufficient evidence from which a jury could infer that the defendant possessed an intent to commit the larceny at the time of the homicide.  *People v. Vaughn,* 340 N.W. 2d 310, 312 (Mich. Ct. App. 1983); *see also Calicut v. Quigley*, No. 2007 WL 37751, *4 (E.D. Mich. January 3, 2007).

In the present case, Petitioner told the police that she was aware that Mario Ingram was going to ask the victim for money prior to the assault.  Petitioner took money from the victim immediately after the assault and ultimately retained both the victim's car and wallet.  This was sufficient circumstantial evidence to establish that Petitioner intended to assist in the underlying felony of larceny prior to the fatal assault.

Finally, Petitioner's contention that there was insufficient evidence of malice to sustain her felony murder conviction must be also rejected.  Even if Petitioner was initially unaware that Mario Ingram intended to kill the victim at the commencement of the larceny, she could still be convicted of first-degree felony murder under an aiding and abetting theory if she became aware of her co-defendant's intention to kill the

victim during the larceny, but continued to assist with the crime.  *See People v. Feldmann,* 449 N.W. 2d 692, 697 (Mich. Ct. App. 1989).  The evidence establishes that when Mario Ingram began strangling the victim, Petitioner assisted him by placing the car in park and by relocking the car door, which prevented the victim from escaping. Petitioner then helped her co-defendant place tape on the victim's mouth and nose and helped dispose of the body.  Petitioner, in fact, told the police that she assumed that the co-defendant placed tape around the victim's mouth and nose to make sure that the victim was dead.  A rational trier of fact could infer from Petitioner's act of assisting Mario Ingram to place tape over the victim's mouth and nose and to help him dispose of the body that Petitioner wanted to help ensure that the victim was dead, so as to support a finding of malice on her part.

In the present case, a rational trier of fact could have concluded from the evidence presented that Petitioner aided and abetted in the larceny and killing of the victim and did so with the requisite malice, so as to support her conviction of felony murder under an aiding and abetting theory.  Petitioner is not entitled to habeas relief on her first claim, because the Michigan Court of Appeals' rejection of her sufficiency of evidence claim was not an unreasonable application of clearly established federal law. *See Meade,* 265 F. Supp. 2d at 858-59.

### B.  Claim # 2.  The directed verdict claim.

Petitioner next contends that the trial court erred in failing to direct a verdict on the separate charge of first-degree premeditated murder.  Petitioner, however, was not convicted of first-degree premeditated murder, only the lesser offense of second-

degree murder, and this charge was vacated at sentence on Double Jeopardy grounds.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long*, 450 F. Supp. 2d at 752)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis in original)*; see also Aldrich v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004). A number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F.3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Aldrich,* 327 F. Supp. 2d at 761; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (finding this claim cognizable). In light of the fact that Petitioner was not convicted of first-degree premeditated murder, any error in submitting this charge to the trier of fact was harmless. Petitioner is not entitled to habeas relief on her second claim.

**C. Claim # 3. The claims involving petitioner's statement to the police.**

Petitioner next contends that the trial court erred in failing to suppress petitioner's inculpatory statements to the police.

Petitioner argues that her statement should have been suppressed as the result of an unlawful arrest. Petitioner's Fourth Amendment challenge to the admission of her statement to the police is non-cognizable on federal habeas review. A federal habeas review of a habeas petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

Therefore, on habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that post-arrest statements should have been suppressed as "poisonous fruit" of his illegal arrest, where the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005); *see also Monroe,* 197 F. Supp. 2d at 766. Petitioner is therefore unable to assert a Fourth Amendment claim that her confession was the product of an illegal arrest when she raised the factual basis for this claim in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting her claim. *Walendzinski,* 354 F. Supp. 2d at 759; *see also Lovely v. Jackson,* 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004).

Petitioner next contends that the trial court erred in permitting the police officers to testify that she lied to them about the victim's car after she had been arrested, but prior to being advised of her *Miranda* rights.

The Michigan Court of Appeals rejected this claim, finding that defense counsel had opened the door to this testimony by asking the officers why Petitioner had been sent to detention. *Ingram,* Slip. Op. at * 3. The Michigan Court of Appeals further found that any error was harmless, in light of the fact that the testimony was cumulative of other properly admitted evidence that established that Petitioner had lied about knowing who the car belonged to and denied being in possession of it. *Id.*

A defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927). When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001). In the present case, Petitioner's counsel's questioning opened the door to the officers' testimony about Petitioner's non-*Mirandized* statement. Because Petitioner invited the error here, she cannot obtain habeas relief.

In addition, the admission of Petitioner's statement to the police was harmless error at worst. The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the jury's verdict. *See Kyger v. Carlton,* 146 F.3d 374, 381-82 (6th Cir. 1998). In light of the overwhelming evidence of guilt in this case, including from Petitioner's own subsequently *Mirandized* confession, the admission of this brief non-*Mirandized* statement to the police did not have a substantial or injurious influence or

13

effect on the jury's verdict.  *Id.*  Petitioner is not entitled to habeas relief on her third claim.

### D.  Claims # 4 and # 5.  The state law evidentiary claims.

The court will consolidate Petitioner's fourth and fifth claims for judicial clarity.

In her fourth claim, Petitioner contends that the trial court erred in admitting testimony that she and her co-defendant abandoned the victim's daughter on a doorstep subsequent to the murder.  In her fifth claim, Petitioner contends that the trial court erred in admitting photographs of the murder victim's body.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Petitioner's claim that evidence that the victim's daughter was abandoned was irrelevant does not raise due process issues of constitutional magnitude or entitle her to habeas corpus relief.  *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).  In addition, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of

constitutional dimensions. *See Dell*, 194 F. Supp. 2d at 645. Likewise, Petitioner's claim that the trial court admitted graphic photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002) (internal citation omitted). Finally, the Michigan Court of Appeals concluded that evidence that the victim's daughter was abandoned and the photographs of the victim's body were admissible under Michigan law to prove Petitioner's intent. *Ingram,* Slip. Op. at * 3, 5. Although a state appellate court's finding that no error has occurred is not dispositive when a federal court engages in a fundamental fairness analysis, "it is a strong factor mitigating against a finding that the state trial court's evidentiary ruling rendered the petitioner's trial fundamentally unfair." *Staton v. Warren,* 2005 WL 2010180, *4 (E.D. Mich. August 16, 2005) *(quoting United States ex. rel. Hancock v. McEvers,* 619 F. Supp. 882, 887 (N.D. Ill. 1985)). Petitioner is not entitled to habeas relief on her fourth and fifth claims.

### E. Claim # 6. The jury instruction claims.

Petitioner next contends that she was deprived of a fair trial because of instructional error.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an

omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).

Petitioner first claims that the trial court erred in failing to give an attempt instruction in connection with the felony-murder instruction, which had identified the predicate felony as an attempted larceny. Because Petitioner's counsel failed to object, the Michigan Court of Appeals reviewed the claim for plain error affecting petitioner's substantial rights. The Michigan Court of Appeals concluded that in light of the fact that a completed larceny had taken place in this case, whether or not Petitioner's conduct constituted an attempted larceny was not an issue at trial, therefore, the failure to give an attempt instruction did not warrant appellate relief. *Ingram,* Slip. Op. at * 3.

The Due Process clause and the right to a jury trial require that criminal convictions rest upon a jury determination that the defendant is guilty of every element of the crime which he is charged beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 510 (1995). However, an erroneous jury instruction that omits an element of the offense is subject to a harmless-error analysis on habeas review. *California v. Roy,* 519 U.S. 2, 4 (1996). In this case, the trial court's failure to explain the elements for attempt was harmless error in light of the fact that the evidence at trial established that the completed offense of larceny had been committed by Petitioner. *Cf. Dumas v. Pitcher,* 80 Fed. App'x 386, 388 (6th Cir. 2003) (due process did not require trial court to instruct the jury regarding the essential elements under state law of the felony offense underlying defendant's felony-murder charge, robbery or larceny,

where defendant admitted at trial the fact that a robbery or larceny occurred but denied that he participated in the crime).

Petitioner next contends that the trial court improperly instructed the jury on flight, in accordance with CJI 2d 4.4.  The Michigan Court of Appeals concluded that it was proper for the trial court to give the jury a flight instruction, because there was evidence that Petitioner and her sister began walking away from the scene when the police arrived and arrested Petitioner's boyfriend and another man for possessing the victim's vehicle.  *Ingram,* Slip. Op. at * 4.

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F.2d 1056, 1062 (6th Cir. 1990) (internal citations omitted). Thus, the giving of a flight instruction did not violate Petitioner's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether Petitioner did, in fact, attempt to flee the scene and if so, what state of mind such flight evinced. *See Burton v. Renico,* 391 F.3d 764, 778 (6th Cir. 2004).  Petitioner is not entitled to habeas relief on her sixth claim.

### F.  Claim # 7.  The ineffective assistance of counsel claims.

Petitioner next alleges the ineffective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel"

guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim if the state court's rejection of the claim was a reasonable application of *Strickland. See Welch v. Burke,* 49 F. Supp. 2d 992, 1010 (E.D. Mich. 1999).

Petitioner first claims that her trial counsel was ineffective for failing to file a motion in limine to suppress evidence that the police seized marijuana from her when she was arrested. Petitioner alleges that this evidence was more prejudicial than probative.

To establish a reasonable probability that, but for counsel's unprofessional errors, the result of proceeding would have been different, a habeas petitioner must make more than merely speculative assertions. *See Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir. 1985). In this case, it is merely speculative to conclude that the trial court would have excluded references to the marijuana seized from Petitioner at the time of her arrest pursuant to Mich. R. Evid. 403 had such an objection been made. However, speculation as to what a trial court would have done if presented with a motion to

exclude evidence as being more prejudicial than probative "[i]s not equivalent to a showing of prejudice sufficient to undermine confidence in the outcome of the trial." *Garrett v. United States,* 78 F.3d 1296, 1302 (8th Cir. 1996). Moreover, because of the overwhelming evidence in this case, Petitioner was not prejudiced by counsel's failure to object to the admission of this evidence on the ground that it was more prejudicial than probative. *Id.*

As a related claim, Petitioner contends that her trial counsel was ineffective for failing to move to suppress evidence that Petitioner had been the victim of a shooting and a witness in a prior homicide case. However, as the Michigan Court of Appeals indicated in rejecting this claim, Petitioner's trial counsel opposed the prosecutor's motion in limine to introduce evidence that Petitioner had given a statement in a previous case and the trial court had ruled that this evidence was relevant. *Ingram,* Slip. Op. at * 4. Because Petitioner's counsel did, in fact, object to the admission of this evidence, this claim is without merit.

Petitioner next claims that her counsel was ineffective for failing to cross-examine her former boyfriend, Michael Robinson, at the preliminary examination. Robinson had testified at the preliminary examination that Petitioner had placed a stranglehold on him and had asked him how he would react to that. At trial, Robinson's preliminary examination testimony was introduced into evidence after the trial court found that Robinson was unavailable to testify (see Claim # 9, *infra*).

Assuming that trial counsel was ineffective in failing to cross-examine Robinson, Petitioner is unable to show that she was prejudiced by such failure, in light of the far more inculpatory evidence that was introduced against Petitioner at her trial, including

her own confession.  Petitioner's ineffective assistance of counsel claim must fail,
because even if counsel was deficient in failing to cross-examine Robinson, Petitioner
has failed to demonstrate any reasonable probability that the cross-examination of this
witness by defense counsel would have affected the result of the proceeding.  *Moss v.
Hofbauer,* 286 F.3d 851, 866 (6th Cir. 2002).

### G.  Claim # 8.  The prosecutorial misconduct claim.

Petitioner next claims that the prosecutor committed misconduct when she
"spoke" in the "voice" of the victim and the "voice" of Petitioner in her opening
statement.

When a petitioner seeking habeas relief makes a claim of prosecutorial
misconduct, the reviewing court must consider that the touchstone of due process is
the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a
court's role is to determine whether the conduct was so egregious as to render the
entire trial fundamentally unfair.  *Serra v. Michigan Department of Corrections*, 4 F.3d
1348, 1355-56 (6th Cir. 1993).  Because this case is a habeas case and is not a direct
appeal, the inquiry into this issue is less stringent.  *See Millender v. Adams*, 187 F.
Supp. 2d 852, 875 (E.D. Mich. 2002).  When analyzing a claim of prosecutorial
misconduct, a court must initially decide whether the challenged statements were
improper.  *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  If the conduct is
improper, the district court must then examine whether the statements or remarks are
so flagrant as to constitute a denial of due process and warrant granting a writ.  *Id.*  In
evaluating prosecutorial misconduct in a habeas case, consideration should be given to

the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F.3d at 1355-56.

There is no *per se* rule that a prosecutor's "testimony" in the voice of the victim during closing argument violates a defendant's due process rights; rather, the normal standard of review in federal habeas cases is appropriate, under which petitioner's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Drayden v. White,* 232 F.3d 704, 713 (9th Cir. 2000). In this case, the prosecutor's soliloquy, in which she assumed the voices of the victim and Petitioner, did not deprive Petitioner of a fair trial, in light of the fact that the prosecutor's statements were supported by the evidence and would have been entirely proper had they been made in the "third person." *Id.* Secondly, any prejudice was ameliorated by the trial court's instructions that the lawyers' arguments were not evidence and that the jurors should not let sympathy or prejudice influence their decision. *Id.* Accordingly, Petitioner is not entitled to habeas relief on her eighth claim.

## H.  Claim # 9.  The Confrontation Clause claim.

In Petitioner's last claim, she contends that her right to confrontation was violated when the prosecutor was permitted to introduce Robinson's preliminary examination testimony at Petitioner's trial.

At the time of Petitioner's conviction and direct appeal, the United States Supreme Court held that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when:

> 1. the evidence falls within a firmly rooted exception to the hearsay rule; or,
> 2. it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

*Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

On March 8, 2004, the United States Supreme Court overruled its holding in *Ohio v. Roberts,* and held that out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *Crawford v. Washington,* 541 S. Ct. 36, 68 (2004). Petitioner contends that *Crawford* should be given retroactive effect to his case.

The United States Supreme Court recently held that *Crawford* is not to be applied retroactively to cases that were already final at the time of that decision. *Whorton v. Bockting*, 127 S .Ct. 1173, 1177 (2007). Because Petitioner's conviction became final prior to the *Crawford* decision, this Court must therefore analyze Petitioner's claim under *Ohio v. Roberts* and its progeny.

Former testimony of an unavailable witness is a firmly rooted hearsay exception. See Mich. R. Evid. 804(b)(1); Fed.R.Evid. 804(b)(1); *United States v. Reed,* 227 F.3d 763, 769 (7th Cir.2000); *United States v. McKeeve*, 131 F.3d 1, 9 (1st Cir.1997); *Ecker v. Scott*, 69 F.3d 69, 71 (5th Cir.1995).

22

When prosecutors seek to admit a nontestifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *McCandless v. Vaughn*, 172 F.3d 255, 265 (3rd Cir. 1999). Petitioner does not challenge the finding that Robinson was unavailable to testify at trial.

In the present case, Robinson's former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, Petitioner and her counsel were present, and the victim was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Dres v. Campoy*, 784 F.2d 996, 1001 (9th Cir. 1986); *Eastham v. Johnson*, 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). Moreover, even if counsel did not take full advantage of the opportunity to cross-examine Robinson at the preliminary examination, he had an unlimited opportunity to do so. Therefore, the admission of Robinson's preliminary examination testimony at Petitioner's trial did not violate her right to confrontation. *See Glenn v. Dallman,* 635 F.2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F.2d 1054, 1057 (6th Cir. 1972).[4]

## I. The certificate of appealability

---

[4] Robinson's preliminary examination testimony would be admissible even under the holding in *Crawford. See e.g. Carranza v. Smith,* 121 Fed. Appx. 199, 202, n. 4 (9th Cir. 2005).

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to dismiss the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901 (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997), *rev'd in part on other grounds*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition ... will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted.

### IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

24

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

       s/Robert H. Cleland                
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2008, by electronic and/or ordinary mail.

       s/Lisa Wagner                   
Case Manager and Deputy Clerk
(313) 234-5522